ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| EL PUEBLO DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>NELSON PASTOR MÁRQUEZ<br><br>Apelante | KLAN202300557 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm. GBD2022G0020<br><br>Sobre: ART. 199 (D) DAÑO AGRAVADO |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Romero García y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de diciembre de 2024.

**I.**

El 25 de abril de 2022 el Ministerio Público presentó una denuncia contra el Sr. Nelson Pastor Márquez (parte apelante o el señor Pastor Márquez) de la cual se desprendía un cargo por infracción al Art. 199 (d) del Código Penal de Puerto Rico, 33 LPRA § 5269. Los hechos imputados consistieron en que la parte apelante le dio una patada al inodoro ubicado dentro de la celda del Cuartel de la División de Autopista de Salinas del Estado Libre Asociado, desprendiéndose el mismo y ocasionando daños estimados en $330.95.

El 24 de mayo de 2022 se celebró una vista de procesabilidad al amparo de la Regla 240 de Procedimiento Criminal, 34 LPRA App. I, Regla 240, en la cual la psiquiatra del Estado, Dra. Yamilka E. Rolón García (Dra. Rolón García) indicó que el señor Pastor Márquez era procesable. El 27 de mayo de 2022 el Foro primario emitió

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez José J. Monge Gómez.

*Resolución y Orden* mediante la cual acogió la opinión de la Dra. Rolón García y ordenó la continuación de los procedimientos instados en su contra.

El 16 de junio de 2022, el señor Pastor Márquez renunció por escrito a la Vista Preliminar, cuya celebración estaba pautada para ese mismo día. Seguido, el 22 de junio de 2022 el Ministerio Público formuló una acusación contra el señor Pastor Márquez por infracción al Art. 199 (d) del Código Penal de Puerto Rico, *Íd.*, antes mencionado. El 5 de julio de 2022 se celebró la vista de lectura de acusación.

El 1 de agosto de 2022, a petición del Ministerio Público el Tribunal de Primera Instancia declaró *Con Lugar* la consolidación del caso GBD2022G0020 con el caso G1TR202200050. Este último por manejo de vehículo de motor bajo los efectos de bebidas embriagantes, según tipificado por el Art. 7.02 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, 9 LPRA § 5202, conocida como la Ley de Vehículos y Tránsito de Puerto Rico.

Tras varios reseñalamientos del juicio en su fondo, este fue finalmente celebrado por Tribunal de Derecho el 26 de octubre de 2022,[2] y se extendió hasta el 29 de marzo de 2023. En lo pertinente al cargo de daño agravado, la prueba testifical del Ministerio Público consistió en las siguientes declaraciones:

### 1. Sgto. Miriam E. Márquez de Jesús (Sgto. Márquez de Jesús)

A preguntas del Ministerio Público, la Sgto. Márquez de Jesús relató que llevaba un año y medio adscrita a la División de Autopistas de Salinas.[3] Indicó que el 24 de marzo de 2022 tomó servicio de 4:00 pm a 4:00 am[4] y que, el edificio donde ubica la

---

[2] En esa fecha el apelante renunció a su derecho a juicio por jurado.
[3] TPO, pág. 255, líneas 12-18.
[4] TPO, pág. 256, líneas 13-19.

División de Autopistas de Salinas pertenece a la Autoridad de Carreteras porque allí existe una certificación y que esta se encarga del mantenimiento.[5] Relató que la noche del 24 de marzo de 2022 se encontraba patrullando junto a los agentes Ramón Torres Rentas y Jepsy Lespier Soto en la jurisdicción de Salinas cuando detuvieron a la parte apelante quien fue identificado en sala en ese momento.[6] Luego de referirse a algunos detalles de la intervención, sostuvo que el señor Pastor Márquez fue ingresado a la celda del cuartel de la División de Autopistas de Salinas.[7] Explicó que la celda quedaba al lado del retén quien estaba observándolo en todo momento[8] y que hay una pared entre el inodoro de la celda y el retén por lo que la persona si está sentada se le puede ver del torso hacia la cabeza, pero si está fuera de esa área la ve completa.[9] Continuó narrando que, el inodoro ubicado en la celda se encontraba en perfectas condiciones previo al ingreso del señor Pastor Márquez[10] y que al partir a gestionar una orden judicial junto al Agte. Lespier,[11] este quedó bajo la custodia del Agte. Agustín Rodríguez Colón encargado del retén y el Agte. Torres Rentas.[12]

A eso de las 12:10 de la noche del 25 de marzo de 2022 el Agte. Rodríguez Colón le notificó vía llamada telefónica que la parte apelante pateó el inodoro de la celda y lo estaba rompiendo.[13] Pudo corroborar que la celda estaba destruida al regresar al cuartel y que el área fue fotografiada por Orlando Ortíz de servicios técnicos y que las fotos fueron las mismas presentadas en sala el día en que vertió su testimonio.[14] Afirmó que a raíz del incidente la única celda de la

---

[5] TPO, pág. 257, líneas 1-11.
[6] TPO, pág. 257, líneas 12-20; TPO, pág. 259, líneas 8-25; TPO, pág. 260, líneas 1-3.
[7] TPO, pág. 264, líneas 20-25 y pág. 265, líneas 1-3.
[8] TPO, pág. 265, líneas 4-8; TPO, pág. 265, líneas 11-20.
[9] TPO, pág. 267, líneas 1-19; TPO.
[10] TPO, pág. 268, líneas 2-12.
[11] TPO, pág. 268, líneas 13-25 y pág. 269, líneas 1-2.
[12] TPO, pág. 269, líneas 3-15.
[13] TPO, pág. 269, líneas 16-25 y pág. 270, líneas 1-7.
[14] TPO, pág. 271, líneas 7-11; TPO, pág. 278, líneas 3-15.

División de Autopistas de Salinas quedó inutilizada totalmente por varios meses por falta de servicio sanitario.[15]

A preguntas de la defensa expuso que el señor Pastor Márquez se mantuvo esposado en la celda, que nunca le encadenaron los pies[16] y que no le constaba de propio y personal conocimiento que este fuera quien rompió el inodoro.[17]

### 2. Agte. Ramón Torres Rentas (Agte. Torres Rentas)

En el examen directo el Agte. Torres Rentas declaró que el 24 de marzo de 2022 estaba adscrito a la División de Autopista de Salinas.[18] Expuso que esa noche el señor Pastor Márquez fue detenido por conducir a exceso de velocidad.[19] Luego, explicó que el Agte. Lespier se percató de que el señor Pastor Márquez expedía un fuerte olor a alcohol por lo que procedió a hacerle las advertencias de embriaguez.[20] La parte apelante fue puesto bajo arresto y transportado en una patrulla hasta el cuartel de la División de Autopistas de Salinas[21] y testificó que una vez en el cuartel mantuvo una actitud descrita como hostil, agresiva y negativa hacia los agentes, por lo que fue llevado hacia la celda[22] solo con el retén teniendo visibilidad sobre esta.[23] Posteriormente, la hija del señor Pastor Márquez llegó a la División y luego de pedirle una silla se sentó frente a la celda.[24] Sostuvo que mientras estaba frente al retén escuchó ruidos provenientes de la celda y que el Agte. Rodríguez Colón le dijo "mira, está rompiendo el *toilet*",[25] mientras la hija de la parte apelante continuaba frente a su padre observándolo.[26] Se

---

[15] TPO, pág. 279, líneas 3-22.
[16] TPO, pág. 283, líneas 3-20.
[17] TPO, pág. 290, línea 25, pág. 291, líneas 1-3, pág. 296, líneas 24-25 y pág. 297, líneas 1-9.
[18] TPO, pág. 300, líneas 16-20.
[19] TPO, pág. 303, líneas 3-22.
[20] TPO, pág. 305, líneas 7-24.
[21] TPO, pág. 306, líneas 3-24.
[22] TPO, pág. 308, líneas 1-18.
[23] TPO, pág. 310, líneas 21-25 y pág. 311, líneas 1-5.
[24] TPO, pág. 313, líneas 2-19; TPO, pág. 314, líneas 17-18.
[25] TPO, pág. 315, líneas 6-8 y líneas 13-18.
[26] TPO, pág. 315, líneas 20-21.

acercó a la celda y observó al señor Pastor Márquez dándole patadas al inodoro[27] e intentó entrar, pero la parte apelante no se lo permitió porque tomó los pedazos del inodoro e hizo el amague de lanzárselos.[28] Observó que el inodoro quedó hecho pedazos[29] y le constaba de propio y personal conocimiento que el señor Pastor Márquez fue quien rompió el inodoro porque lo vio.[30]

En el turno de contrainterrogatorio, admitió que la parte apelante se mantuvo esposado todo el tiempo pero que no recordaba si también estuvo encadenado de los pies[31] también arguyó que era posible estar esposado de manos y lanzar un objeto.[32]

### 3. Agte. Agustín Rodríguez Colón (Agte. Rodríguez Colón)

Manifestó que para el 24 de marzo de 2022 se encontraba trabajando para la División de Autopistas de Salinas y que esa noche tomó servicio a las 7:50 pm hasta las 4:00 am del día siguiente.[33] Identificó a la parte apelante como la persona que llegó arrestada al cuartel y que la celda estaba en perfecto estado antes de que fuera ingresado.[34] Sostuvo que en la celda no había lavamanos y observó al señor Pastor Márquez dándole patadas al inodoro,[35] luego le dijo al Agte. Rentas "mira, está rompiendo el inodoro".[36] Continuó testificando que el inodoro era de acrílico y que al romperlo agarró unos pedazos.[37] Finalmente, expuso que llamaron a la División de Servicios Técnicos para que tomara fotos a los daños causados.[38]

El Agte. Rodríguez Colón admitió en el contrainterrogatorio que el señor Pastor Márquez no llegó a lanzar los pedazos del

---

[27] TPO, pág. 316, líneas 2-11.
[28] TPO, pág. 317, líneas 23-24 y pág. 318, líneas 4-10.
[29] TPO, pág. 319, líneas 1-7.
[30] TPO, pág. 319, línea 25 y pág. 320, líneas 1-6.
[31] TPO, pág. 327, líneas 12-25 y pág. 328, líneas 1-2.
[32] TPO, pág. 330, líneas 2-5.
[33] TPO, pág. 345, líneas 14-23.
[34] TPO, pág. 346, líneas 13-25 y pág. 347, líneas 1-15; TPO, pág. 350, líneas 16-21.
[35] TPO, pág. 351, líneas 1-2; TPO, pág. 354, líneas 1-22.
[36] TPO, pág. 355, líneas 1-4.
[37] TPO, pág. 355, líneas 23-25 y pág. 356, líneas 1-5.
[38] TPO, pág. 357, líneas 4-14.

inodoro, sino que se quedó con ellos en las manos,[39] además, reconoció que estaba esposado, pero no encadenado.[40]

Como testigo de la defensa compareció **Michelle Pastor Dávila** (señora Pastor Dávila), quien afirmó que Nelson Pastor Márquez es su padre.[41] Que el 24 de marzo de 2022 a eso de las 11:35 de la noche recibió una llamada de la Comandancia y al llegar encontró a su padre esposado de manos y pies "en un punto de crisis emocional" y que éste le pidió agua.[42] Sostuvo que salió a buscar agua y cuando regresó encontró que la parte apelante se estaba calmando, pero que luego entró en crisis y procedieron a sacarla.[43] Continuó narrando que en ningún momento le ofrecieron una silla y que se mantuvo parada frente a la celda[44] y escuchó desde afuera a su padre pedir a su abogado.[45] Expresó que su padre es veterano y cuando se encuentra en momentos de crisis se procede a llamar al Hospital de Veteranos[46] y que esa información la explicó a los agentes cuando le hicieron la llamada.[47]

En el contrainterrogatorio narró que cuando llegó a la División de Autopista de Salinas la celda estaba en buenas condiciones,[48] también, que escuchó un ruido y cuando regresó a la celda vio el inodoro roto,[49] y que la parte apelante era la única persona que estaba dentro de la celda.[50]

Luego de escuchar la prueba el 29 de marzo de 2023 el TPI declaró culpable a la parte apelante por infringir el Art. 199(d) del Código Penal, *supra*, y el Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra,* y refirió a ambos para informe pre-sentencia.

---

[39] TPO, pág. 362, líneas 3-9.
[40] TPO, pág. 365, líneas 11-18.
[41] TPO, pág. 371, líneas 11-12.
[42] TPO, pág. 372, líneas 3-7 y líneas 17-25.
[43] TPO, pág. 373, líneas 1-7.
[44] TPO, pág. 373, líneas 11-18.
[45] TPO, pág. 375, líneas 1-6.
[46] TPO, pág. 375, líneas 7-21.
[47] TPO, pág. 376, líneas 7-10.
[48] TPO, pág. 386, líneas 14-22.
[49] TPO, pág. 390, líneas 5-11.
[50] TPO, pág. 390, líneas 12-23.

**El 25 de mayo de 2023 se dictó *Sentencia* en cuanto al caso GBD2022G0020 por daño agravado, Art. 199(d) del Código Penal, *supra*, se le impuso una pena de tres años en *Sentencia* de cárcel suspendida y libertad a prueba y como condición especial, se le impuso restituir el valor estimado de los daños bajo apercibimiento que de incumplir con esta o cualquiera de las condiciones, se le podría revocar el beneficio y podría recluírsele en prisión donde cumpliría la totalidad de la Sentencia.** En esa ocasión no se fijó la cuantía a restituirse, puesto que quedó sujeta a que el Ministerio Público presentara una certificación oficial del costo del daño causado o de la reparación.

El 12 de junio de 2023 el Ministerio Público presentó una *Moción en Cumplimiento de Orden*, en la cual anejó la factura #1364 del 19 de agosto de 2022 certificada por la Autoridad de Carreteras y Transportación por la cantidad total de $3,660.00, la factura #2023-ACT-03 con fecha del 8 de febrero de 2023 por trabajos de instalación de lavamanos[51] y la factura #2023-ACT-06 con fecha del 23 de marzo de 2023 ambas totalizando $2,410.00 relacionados a trabajos de plomería tras la instalación del lavamanos.[52] Otros documentos que obran del expediente del fiscal, incluye una *Orden de Compra para Bienes* del 18 de mayo de 2022 con un total de $3,660.00 para suplir e instalar el inodoro de la celda del Cuartel de Autopistas Salinas en la PR-52 y finalmente una cotización para realizar dicha labor por $3,990.00 que incluye seguros, arbitrios y patentes. El 14 de junio de 2023 el Foro de Instancia les notificó a las partes que se discutiría ese asunto el 18 de julio de 2023.

---

[51] La descripción que surge de la factura es: "[a]dquisición e instalación de lavamano[s] en acero inoxidable para celda de Cuartel Autopista Salinas. Incluye materiales y mano de obra". Su total fue $1,750.00. A su vez, la factura incluyó la siguiente nota: "[s]e instaló el lavamanos, se envió requisición adicional para la instalación de tubería ya que en el área no hay facilidades de agua para el lavamanos".

[52] La descripción contenida fue la siguiente: "[t]rabajo adicional de instalación de tubos desde la tubería de la manguera del exterior del edificio, durante la instalación del lavamano[s] en el peaje de Salinas según la requisición 54636". Su total fueron $600.00.

Inconforme, el 26 de junio de 2023 compareció el señor Pastor Márquez mediante *Solicitud de Apelación,* en el cual señaló el siguiente error:

> **Primer error:** Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia y emitir fallo de culpabilidad en contra de la parte apelante por infracción al Art. 199 del Código Penal de Puerto Rico, 33 LPRA § 5269, mejor conocido como Daño Agravado, sin que se probaran los elementos del delito conforme al Código Penal de Puerto Rico, más allá de duda razonable.

Transcurridos algunos trámites procesales, el 20 de septiembre de 2023 el Foro primario notificó una *Sentencia Enmendada.* El 11 de diciembre de 2023 el apelante presentó el escrito *Alegato de la Parte apelante.* En este, reiteró el error antes señalado, más levantó el siguiente:

> **Segundo error:** Erró el Honorable Tribunal de Primera Instancia al imponer en su Sentencia una pena de restitución por una cantidad excesivamente mayor a la alegada como parte de la Acusación, sin presentación de prueba a tales efectos y sin tomar en consideración los hechos realmente probados en el caso ante su consideración.

El 10 de enero de 2024 el Ministerio Público presentó el *Alegato del Pueblo.*

**II.**

**-A-**

El delito menos grave de daños se encuentra tipificado por el Art. 198 del Código Penal, 33 LPRA § 5268. La conducta punible bajo este es inutilizar, alterar, desaparecer o causar deterioro a un bien mueble o un bien inmueble ajeno, total o parcialmente. *Íd.* El tribunal puede imponer la pena de restitución. *Íd.*

Por su parte, el delito de daño agravado está tipificado por el Art. 199 del Código Penal, 33 LPRA § 5269. Este tiene una pena fija de tres (3) años si, al cometer el delito de daños del Art.198, *supra,* concurre cualquiera de las siguientes circunstancias:

> (a) cuando el autor emplea sustancias dañinas, ya sean venenosas, corrosivas, inflamables o radioactivas, si el

hecho no constituye delito de mayor gravedad; (b) cuando el daño causado es de quinientos (500) dólares o más; (c) cuando el daño se causa en bienes de interés histórico, artístico o cultural; **(d) cuando el daño se causa a bienes muebles o inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico** o a entidades privadas con fines no pecuniarios; o (e) cuando el daño se causa a vehículos oficiales de las agencias del orden público. *Íd.* (Énfasis suplido).

En este caso, el tribunal también podrá imponer la pena de restitución.

**-B-**

La presunción de inocencia es un axioma constitucional que exige que la culpabilidad de una persona acusada de cometer un delito se demuestre más allá de toda duda razonable. *Pueblo v. Meléndez Monserrate*, 2024 TSPR 80, 214 DPR___ (2024). El peso de controvertir esta presunción recae sobre el Estado quien, a través del Ministerio Público, debe presentar prueba suficiente y satisfactoria sobre lo siguiente: (1) cada elemento del delito, (2) su conexión con el acusado; y (3) la intención o negligencia criminal de este. *Íd.*

La responsabilidad del Estado en la presentación de esa prueba no puede descargarse livianamente. Además de ser suficiente, la prueba de cargo también debe producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002). Esto último no quiere decir, sin embargo, que el Ministerio Público tenga que presentar prueba que establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Bigio Pastrana*, 116 DPR 748, 761 (1985).

Por otra parte, la duda razonable que da lugar a la absolución del acusado no es una duda especulativa o imaginaria ni cualquier duda posible. *Pueblo v. García Colón I*, 182 DPR 129, 175 (2011). En cambio, debe tratarse de una duda producto de una consideración justa, imparcial y serena de toda la evidencia del caso. *Íd.* En

concreto, existe duda razonable cuando el juzgador de los hechos siente, en su conciencia, insatisfacción o intranquilidad con la prueba de cargo presentada. *Íd.* En atención a este principio, el Tribunal Supremo de Puerto Rico ha recalcado que los Foros apelativos deben tener la misma tranquilidad al evaluar la prueba en su totalidad. *Pueblo v. Carrasquillo Carrasquillo,* 102 DPR 545, 552 (1974).

A su vez, no debemos abstraernos de la ineludible realidad de que los jueces del Foro de instancia, así como los jurados, están en mejor posición de apreciar y aquilatar la prueba y los testimonios presentados. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, 213 DPR___ (2024). Por consiguiente, la apreciación imparcial de la prueba que realiza el juzgador de los hechos merece gran respeto y la deferencia por parte de los Foros revisores. *Íd.* Entonces, al revisar las cuestiones de hecho en convicciones criminales, solo intervendremos con su apreciación si se demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto o cuando la apreciación de la prueba que realice el tribunal sentenciador no concuerde con la realidad fáctica o ésta sea imposible o increíble. Véase: *Pueblo v. Irizarry,* 156 DPR 780, 788–789 (2002); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000); *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 62–63 (1991); *Pueblo v. De Jesús Rivera,* 113 DPR 817, 826 (1983).

Al considerar los elementos que utilizó el juzgador primario para dar por probados los hechos, debemos tener en cuenta que la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que la ley disponga otra cosa. 32 LPRA App. VI, Regla 110. "Ello es así, aunque no se trate del testimonio perfecto o libre de contradicciones". *Pueblo v. Santiago,* 176 DPR 133, 147 (2009).

Asimismo, debe tenerse presente que, de existir un testimonio perfecto, más allá de ser indicativo de veracidad, es altamente sospecho y un posible producto de la fabricación. *Pueblo v. Cabán Torres*, 117 DPR 645, 656 (1986). Incluso, aun aceptando, para fines argumentativos, que las contradicciones de un testigo fueran de índole sustancial, ello solo pone en juego su credibilidad y le corresponde al juzgador de los hechos resolver. *Íd.*, págs. 656-657; *Pueblo v. Cruz Negrón,* 104 DPR 881, 883 (1976). En ese sentido, es imprescindible armonizar toda la prueba y analizarla en su totalidad a los fines de arribar al peso que ha de concedérsele. *Pueblo v. Rodríguez Román*, 128 DPR 121, 129 (1991).

**-C-**

La Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 del 3 de abril de 1946, según enmendada, 34 LPRA § 1026 *et seq.*, hace viable la implantación de la política pública enunciada en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado a los fines de "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". *Pueblo v. Vega Vélez*, 125 DPR 188, 200 (1990). Por lo cual, dispone de un sistema que confiere al convicto la oportunidad de cumplir su Sentencia o parte de ella en libertad, mientras observe buena conducta y cumpla con las condiciones impuestas por el Foro sentenciador. *Pueblo* v. *Vázquez Carrasquillo,* 174 DPR 40, 46 (2008); *Pueblo* v. *Negrón Caldero,* 157 DPR 413, 418 (2002); *Pueblo* v. *Zayas Rodríguez,* 147 DPR 530, 535 (1999); *Pueblo* v. *Molina Virola,* 141 DPR 713, 718 (1996).

Así pues, el fin último de la referida ley es convertir al convicto de delito en un miembro útil de la sociedad. *Pueblo v. Texidor Seda,* 128 DPR 578, 582 (1991). Sin embargo, el beneficio de la Sentencia suspendida constituye un privilegio, por lo que su concesión reposa preponderantemente en el sano ejercicio de la discreción judicial.

*Pueblo v. Vázquez Carrasquillo,* supra, págs. 46-47; *Pueblo v. Zayas Rodríguez,* supra, pág. 536; *Pueblo v. Molina Virola,* supra*,* pág. 719; *Pueblo v. Álvarez Maurás,* 100 DPR 620, 624 (1972); *Pueblo v. Rivera,* 79 DPR 880, 881 (1957).

La Ley de Sentencia Suspendida y Libertad a Prueba faculta al Foro primario a imponer condiciones al conceder la probatoria. *Vázquez v. Caraballo,* 114 DPR 272, 275 (1983). En particular, el Art. 2A de dicha ley,[53] establece el modo de imponerle una condición al probando. El citado artículo lee como sigue:

> El tribunal sentenciador, en todo caso en que ordene que la persona sentenciada quede en libertad a prueba, impondrá y hará constar por escrito, como parte de las condiciones de la libertad a prueba, **que tiene facultad de razonablemente imponer al momento de dictar la sentencia,** el compromiso del probando de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales mientras esté disfrutando de los beneficios que le concede esta Ley. **El tribunal no podrá imponer condiciones adicionales a las que se hayan hecho constar expresamente y por escrito al momento de dictar la sentencia.** Art. 2A, 34 LPRA § 1027a. (Énfasis suplido).

El citado Art. 2A fue añadido en virtud de la Ley Núm. 31 de 29 de mayo de 1986. Al cabo de varias enmiendas, la Ley Núm. 57 de 2 de noviembre de 2021 incorporó las frases "que tiene facultad de razonablemente imponer al momento de dictar la sentencia" y "[e]l tribunal no podrá imponer condiciones adicionales a las que se hayan hecho constar expresamente y por escrito al momento de dictar la sentencia" antes señaladas. Al introducir esta enmienda, la Asamblea Legislativa expuso que:

> Luego de concedido el privilegio, es imperativo que se garantice un debido proceso de ley, ante la eventualidad de que se solicite un proceso de revocación de probatoria o libertad a prueba. Por ello, es fundamental que para que proceda una revocación de los beneficios concedidos bajo una sentencia suspendida o de los términos para ser puesto en libertad a prueba, el procedimiento judicial esté libre de arbitrariedades o de abusos de discreción por parte del Estado. Por consiguiente, no se podrá comenzar ningún proceso de

---

[53] 34 LPRA § 1027a.

revocación contra alguna persona que haya sido puesta en libertad a prueba bajo los términos de esta Ley, a menos que se demuestre que el probando ha incumplido con alguna de las condiciones impuestas al momento de dictar la sentencia. **Es decir, que los tribunales no tienen discreción para imponer más restricciones o condiciones especiales para disfrutar de los beneficios de una sentencia suspendida, más allá de aquellos que fueran impuestos al momento de dictarse la sentencia**. Exposición de motivos de la Ley Núm. 57 de 2 de noviembre de 2021.

Dentro de las condiciones que el Foro juzgador está facultado a imponer a un acusado que se le concede el beneficio de la sentencia suspendida, se encuentra el resarcir a la parte perjudicada por los daños ocasionados o que corrija el mal causado a raíz del acto delictivo. *Vázquez v. Caraballo*, supra, pág. 276. No obstante, puntualizamos que la restitución prevista por la Ley de Sentencia Suspendida y Libertad a Prueba, *supra*, es distinguible de la del Código Penal. *Íd.*[54]

En su esencia, ambas medidas imponen al convicto la restitución de los daños que ocasiona su conducta delictiva. Sin embargo, la restitución como sanción penal, estatuida en el Art. 58 del Código Penal,[55] es parte de la influencia de la escuela del pensamiento de justicia restauradora, basada en el reconocimiento de los derechos y necesidades de las víctimas (y la sociedad). Si bien prioriza la reparación de los daños a las víctimas sobre el castigo a los ofensores, no deja de ser una sanción penal eminentemente punitiva y tampoco busca la rehabilitación del convicto. Como tal, la pena de restitución tiene que establecerse específicamente por el legislador[56] y está limitada, tanto en su cuantía como en la forma de su pago.[57]

---

[54] Este fragmento del caso aludía al ahora derogado Art. 49A del Código Penal de 1974, 33 LPRA sec. 3212. No obstante, entendemos que este precedente sigue vigente, puesto que el actual Art. 58 del Código Penal, 33 LPRA § 5091 conserva su carácter punitivo. *Véase* Dora Nevares Muñiz, Código Penal de Puerto Rico, 4ta ed. rev., Instituto para el Desarrollo del Derecho, San Juan, Ed., 2019, pág. 110.
[55] 33 LPRA § 5091.
[56] *Pueblo* v. *Falcón Negrón*, 126 DPR 75 (1990).
[57] *Vazquez* v. *Caraballo*, 114 DPR 272, 277 (1983).

Así, el estatuto penal dispone que, la restitución puede hacerse en dinero, mediante la prestación de servicios, o la entrega de los bienes ilegalmente apropiados o su equivalente en caso de que no estén disponibles. Si el tribunal sentenciador determina que dicha pena se satisfaga monetariamente, la fijación de la cuantía a imponerse tiene que considerar, "el total de los daños que habrán de restituirse, la participación prorrateada del convicto, si fueron varios los partícipes en el hecho delictivo, la capacidad del convicto para pagar, y todo otro elemento que permita una fijación adecuada a las circunstancias del caso y a la condición del convicto".[58] La prueba de daños y demás circunstancias del delito dictan los parámetros de la restitución a ser impuesta.[59]

En ese sentido, el delito de daño agravado estatuido en el Art. 199 del Código Penal es uno de los delitos en que, **como parte de la pena**, el tribunal sentenciador puede obligar al convicto a restituir los daños y pérdidas que su conducta delictiva haya ocasionado. Conforme el Art. 58 del Código Penal,[60] la restitución consiste "en la

---

[58] 33 LPRA § 5091.

[59] Sobre la restitución como medida rehabilitadora un panel hermano, en el caso NUM. SSCE93-0051 (7 de junio de 1993), dispuso lo siguiente: "Hoy día, se acepta que [,] bajo el concepto de restitución, además de lograr la reparación del daño por parte del delincuente, se persigue otros propósitos terapéuticos y rehabilitadores. La reparación del daño por parte del delincuente hacia la víctima, produce en el primero una sensación de integración a la sociedad, en vez del sentimiento del aislamiento y rechazo que generalmente experimentan los que han incurrido en conducta ilegal".

[60] Artículo 58.- Restitución.

La pena de restitución consiste en la obligación que el tribunal impone de compensar a la víctima los daños y pérdidas que le haya ocasionado a su persona o a su propiedad, como consecuencia del delito. La pena de restitución no incluye sufrimientos y angustias mentales.

El tribunal puede disponer que la pena de restitución sea satisfecha en dinero, mediante la prestación de servicios, o la entrega de los bienes ilegalmente apropiados o su equivalente en caso de que no estén disponibles. En todos estos casos el tribunal deberá tener presente que el convicto cumplirá la pena de restitución con sus bienes presentes y futuros. En el caso en que la pena de restitución sea satisfecha en dinero, el importe será determinado por el tribunal tomando en consideración: el total de los daños que habrán de restituirse, la participación prorrateada del convicto, si fueron varios los partícipes en el hecho delictivo, la capacidad del convicto para pagar, y todo otro elemento que permita una fijación adecuada a las circunstancias del caso y a la condición del convicto.

La pena de restitución debe satisfacerse inmediatamente. No obstante, a solicitud del sentenciado y a discreción del tribunal, tomando en cuenta la situación económica del convicto, podrá pagarse en su totalidad o en plazos dentro de un término razonable fijado por el tribunal a partir de la fecha en que ha quedado firme la sentencia. 33 LPRA § 5091.

obligación que el tribunal impone [al convicto] de compensar a la víctima los daños y pérdidas que le haya ocasionado a su persona o a su propiedad, como consecuencia del delito. La pena de restitución no incluye sufrimientos y angustias mentales".[61] De manera que la restitución debe "adaptarse al delito y enfatizar la ilicitud del delito y la responsabilidad moral del acusado".[62]

Así pues al determinar la cuantía de la restitución, "la mayoría de los tribunales consideran no sólo el monto de la pérdida de la víctima, sino también los efectos rehabilitadores, disuasorios y retributivos".[63] "[E]l tribunal está autorizado a imponer una sanción punitiva que no esté limitada por la cantidad de daño que el delincuente infligió a la víctima. Por lo tanto, el monto de la restitución ordenada, como la magnitud de cualquier otra sanción, depende únicamente del grado de privación que sufrirá el infractor".[64] En contraposición al derecho del probando a la libertad o la propiedad está el interés sustancial del Estado en promover los objetivos del derecho penal.[65]

En cuanto a la Ley de Sentencia Suspendida y Libertad a Prueba,[66] esta contiene una disposición que faculta a los jueces a imponerle a los convictos, como **condición** para concederle la probatoria, el resarcimiento de los daños que su conducta ha ocasionado. El Art. 2 de la Ley Núm. 259-1946, establece que "la persona puesta a prueba podrá ser requerida para que, mientras estuviere en libertad a prueba, **resarza a la parte perjudicada de los daños que le hubiere ocasionado o para que asuma la obligación de corregir el mal causado por su acto delictivo**".[67]

---

[61] 33 LPRA § 5091.
[62] Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 HARV. L. REV. 931, 939 (1984) (traducción suplida).
[63] *Íd.* (traducción suplida).
[64] *Íd.*, pág. 944 (traducción suplida).
[65] *Íd.* (traducción suplida).
[66] 34 LPRA § 1026 *et seq.*
[67] 34 LPRA § 1027.

**III.**

En su primer error la parte apelante aduce que el Foro primario incidió al declararlo culpable de la comisión del delito de daño agravado, por lo cual, esencialmente, cuestiona la valoración de la prueba efectuada. En ese sentido, sostiene que no se establecieron los elementos constitutivos del delito toda vez que el Estado no demostró más allá de duda razonable que cometió el mismo.

Luego de estudiada la prueba que estuvo ante la atención del Tribunal de Primera Instancia, encontramos que fue suficiente en derecho para probar todos los elementos del delito de daño agravado más allá de duda razonable. Además, examinada con rigor la transcripción de la prueba, no apreciamos que haya mediado pasión, prejuicio, parcialidad, o que se cometiera un error manifiesto por el Foro primario. De este modo, adelantamos que el primer error no fue cometido. *Nos explicamos.*

Los elementos constitutivos del delito de daños son destruir, inutilizar, alterar, desaparecer o causar deterioro a un bien mueble o inmueble ajeno, total o parcialmente. Por su parte, el delito de daño agravado requiere que, al cometer el delito de daños, concurran cualquiera de las circunstancias vertidas en el Art. 199(d) del Código Penal, 33 LPRA § 5269, entre las que se encuentra que el daño sea causado a bienes muebles o inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico (ELA).

Tras un análisis de la transcripción de la prueba oral vertida y pertinente a la declaración de culpabilidad por el delito de daño agravado, entiéndase los testimonios del Sgto. Márquez de Jesús y los agentes Torres Rentas y Rodríguez Colón, resulta que la parte apelante, una vez ingresado a la celda de la División de Autopistas de Salinas causó daños a un bien mueble del ELA al propinarle patadas al inodoro de la celda, que fue roto y provocó que esta se

mantuviera en desuso por permanecer sin servicio sanitario. Los testimonios presentados demuestran, más allá de duda razonable, que el señor Pastor Márquez cometió el delito de daño agravado.

Es norma reiterada que "la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho". Regla 110(d) de Evidencia, *supra.* Por consiguiente, el testimonio no tiene que ser perfecto, sino suficiente en derecho para sostener el fallo condenatorio. *Pueblo v. Chévere Heredia,* 139 DPR 1, 15 (1995). Así pues, para que contradicciones menores en un testimonio traiga como consecuencia necesaria la revocación de un fallo condenatorio, tiene que producir "en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal", que estremezca el sentido más básico de justicia. *Pueblo v. Rivero, Lugo y Almodóvar,* 121 DPR 454, 474 (1988). Aplicado al caso ante nos, el examen de la prueba aludida no ha creado en nosotros esa insatisfacción o intranquilidad que nos mueva a intervenir con el fallo de culpabilidad por el delito de daño agravado. Además de que el Foro de Instancia estuvo en mejor posición que nosotros para apreciar la prueba ofrecida por las partes, por lo tanto, nos abstendremos de intervenir con su dictamen.

Por otro lado, el segundo error traído a nuestra atención por la parte apelante cuestiona si el Foro *a quo* puede imponer una pena de restitución por una cantidad excesivamente mayor a la alegada como parte de la acusación, sin presentación de prueba a tales efectos y sin tomar en consideración los hechos realmente probados en el caso ante su consideración. En contraste, el Ministerio Público planteó que la prueba de cargo estableció inequívocamente que $3,660.00 era una suma razonable para reparar los daños de la celda y devolverla a su estado original. Veamos.

En la denuncia y luego en la acusación se le imputó a la parte apelante haberle propinado una patada al inodoro de la celda del

Cuartel de la División de Autopista de Salinas propiedad del ELA, en la cual se encontraba recluido el 25 de marzo de 2022. De los documentos surge que los daños estimados fueron de $330.95. Por estos hechos, el 29 de marzo de 2023 el señor Pastor Márquez fue declarado culpable de cometer el delito de daño agravado, Art. 199(d) del Código Penal, *supra,* y por conducir bajo los efectos de bebidas embriagantes, Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra.*

El 25 de mayo de 2023 se celebró el acto de dictar Sentencia. Según recoge la *Minuta*, a pesar de que la defensa no mostró reparo a los informes pre-sentencia, manifestó que no se presentó prueba de la restitución de los $330, por lo que no pudo contrainterrogar la cantidad.[68] En respuesta, el Ministerio Público señaló que toda vez que el delito imputado era el de daño agravado a la propiedad del Estado, era innecesario probar el elemento de cantidad específica y que esto no causaba ningún tipo de efecto.

Luego al entender que no había impedimento legal alguno para que se dictare *Sentencia,* el Foro juzgador le impuso al señor Pastor Márquez una pena de tres años de cárcel por el cargo de daño agravado, Art. 199(d) del Código Penal, *supra.* **Sin embargo, esta fue suspendida a tenor con la Ley de Sentencia Suspendida y Libertad a Prueba. Como *condición especial,* se le ordenó restituir el valor estimado de los daños, bajo apercibimiento de que de incumplir con esta o cualquiera de las condiciones impuestas, se le podría revocar el beneficio y recluírsele en prisión donde cumpliría la totalidad de la Sentencia impuesta conforme a la ley. El Foro de Instancia no impuso la cuantía específica en ese momento, sino que le ordenó al Ministerio**

---

[68] TPO, pág. 416, líneas 20-25; pág. 417, líneas 1-5; pág. 417, líneas 19-25.

**Público que presentara una certificación oficial del costo del daño causado o de la reparación.**

El 12 de junio de 2023 el Ministerio Público compareció mediante *Moción en Cumplimiento de Orden* en la cual anejó tres facturas certificadas por la Autoridad de Carreteras y Transportación. La primera de estas, factura #1364, fue emitida el 19 de agosto de 2022 por concepto de trabajos de plomería. La segunda, con fecha del 8 de febrero de 2023, se emitió por trabajos de instalación de lavamanos. La última factura, fechada del 23 de marzo de 2023 correspondió a trabajos de plomería tras la instalación del lavamanos.[69]

Como expusimos anteriormente, la restitución es una de esas condiciones que pueden ser impuestas en una *Sentencia* suspendida a tenor con la Ley de Sentencias Suspendidas y Libertad a Prueba. *Vázquez v. Caraballo*, supra, pág. 276. En función de ello, nos remitimos al Art. 2A de dicha ley el cual establece los límites a las facultades del Foro primario al imponerle una condición al probando. Dispone que:

> [E]l tribunal sentenciador,. . .impondrá y hará constar por escrito, como parte de las condiciones de la libertad a prueba, que tiene facultad de razonablemente imponer al momento de dictar la sentencia, el compromiso del probando de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales mientras esté disfrutando de los beneficios que le concede esta Ley. **El tribunal no podrá imponer condiciones adicionales a las que se hayan hecho constar expresamente y por escrito al momento de dictar la sentencia**. Art. 2A, 34 LPRA § 1027a. (Énfasis suplido).

En virtud de la aludida disposición estatutaria surge nuestro deber de auscultar la facultad del Foro primario para imponer la condición especial de restitución en la Sentencia del 25 de mayo de

---

[69] Surge del expediente una Requisición al numero 53859 con fecha del 19 de agosto de 2022 para la Orden #103139, donde no se describe trabajo, material o mueble alguno y solo se indica: Cantidad del Contrato $3,360.00 como el total de la factura.

2023 sin fijar la cuantía, sino que fue diferida para su posterior dilucidación en una vista de seguimiento. Ciertamente, es norma reiterada que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorece al acusado y liberalmente en cuanto a lo que les favorece. *Pueblo v. Roche*, 195 DPR 791, 804 (2016). Ello, en tanto y en cuanto lo permita el lenguaje de la ley, las circunstancias de su aplicación, y la intención legislativa al adoptar el estatuto. *Íd.*

Dicho esto, en términos de cómo se debe fijar esta condición, el Art. 2A de la Ley Núm. 259-1946, se limita a indicar que, se hará constar por escrito y al momento de dictar la sentencia. Destaca el estatuto que, el tribunal sentenciador "no podrá imponer condiciones adicionales a las que se hayan hecho constar expresamente y por escrito al momento de dictar la sentencia".[70] Más allá de estos requisitos, la disposición legal guarda silencio sobre otros aspectos procesales importantes, tales como, si la suma de la cuantía está directamente atada al valor del bien dañado, qué participación tienen las partes para poner en posición al juez de fijar la cuantía y cuál es el procedimiento para fijar la cuantía, entre otros.

Debido a ello, el Foro primario estaba facultado para diferir la cuantía de la condición impuesta ya que, en la Sentencia del 25 de mayo de 2023 constató de manera **expresa** varias condiciones especiales para otorgar el privilegio de Sentecia suspendida. Entre ellas dispuso que Pastor Márquez "[r]estituirá el valor estimado de los daños" y posteriormente, en la Sentencia enmendada determinó la cuantía. Nótese que este proceder no es contrario a la Ley de Sentencias Suspendidas y Libertad a Prueba.

---

[70] 34 LPRA § 1027a.

Por su parte, Pastor Márquez en su contención parece confundir la **pena de restitución** provista en el Art. 58 del Código Penal con la **condición de restitución** bajo la Ley de Sentencias Suspendidas. La restitución estatuida en la ley antes citada,[71] no trata de una medida punitiva, sino de una condición que puede imponer un juez para que la persona convicta pueda cumplir su pena de reclusión bajo el régimen de libertad a prueba. Como parte de las disposiciones de la Ley Núm. 259-1946, el propósito de la restitución como condición para conceder la probatoria es preeminentemente rehabilitador[72] y no punitivo. Se enfoca en la aptitud del individuo de convertirse en un miembro útil de la sociedad.

De esta disposición pueden inferirse dos motivos por los que el foro sentenciador puede imponer la restitución como condición para la probatoria: primero, para que resarza a la parte perjudicada los daños que le hubiere ocasionado **o, segundo**, para que asuma la obligación de corregir el mal causado por su acto delictivo. Por tanto, enfatizamos que los requisitos de la restitución como medida punitiva no aplican a la restitución dispuesta en la Ley de Sentencias Suspendidas. Como mencionamos anteriormente, en particular estos son: el total de los daños que habrán de restituirse, la participación prorrateada del convicto, y la capacidad del convicto para pagar. Todos estos factores a considerar deben surgir de la prueba vertida en el juicio, debidamente admitida y aquilatada por el juzgador de los hechos y el tribunal.

En cambio, a la restitución dispuesta en la Ley de Sentencias Suspendidas le aplican otros requisitos, entre ellos: la fijación de su cuantía no puede ser arbitraria, y debe propender a la rehabilitación

---

[71] 34 LPRA § 1026 *et seq.*
[72] *Pueblo* v. *Vélez*, 76 DPR 142, 148 (1954); *Alcalá* v. *Corte*, 66 DPR 430, 433 (1946).

del probando.[73] En otras palabras, si bien la imposición de la restitución ni la fijación de la cuantía depende de la existencia de daños como elemento del delito por el que resultó convicta la persona ni de los daños probados en el juicio, tiene que ser razonable. En la medida en que, lo que impuso el Foro *a quo* fue una condición para concederle el beneficio de sentencia suspendida a Pastor Márquez y no una pena para restituir los daños que ocasionó, este error no se cometió.[74]

**IV.**

Por los fundamentos antes expuestos, los cuales se hacen formar parte de este dictamen, *confirmamos* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[73] *Vázquez* v. *Caraballo*, 114 DPR 272, 278 (1983).

[74] No obstante, el planteamiento presentado por el apelante, aunque incorrecto, no es totalmente inmeritorio. Además de cuestiones de justicia, envuelve aspectos de debido proceso de ley que no debemos ignorar. Al imponerse condiciones de este tipo, en las que se ha de fijar una cuantía de dinero, el tribunal sentenciador debe contar con todos los elementos de juicio que le permitan fijar una cuantía razonable y preferiblemente debe saber si las condiciones económicas del probando le permitirían cumplir con tal obligación. No es adecuado esperar a una fecha posterior al pronunciamiento de la sentencia para fijar la cuantía de la condición impuesta. Sobre todo, porque, en la eventualidad de que el probando no pueda satisfacer el importe de la restitución debido a que la cuantía es irrazonable o a que las condiciones económicas del probando se lo impidan, no puede revocarse la probatoria concedida. "[S]e ha señalado que la validez de una condición que exija del probando que resarza a la víctima de los daños que le ha ocasionado tiene que forzosamente depender de su capacidad económica para llevar esto a cabo". *Vazquez* v. 114 DPR, pág. 278. (citando de *Ability to Pay as Necessary Consideration in Conditioning Probation or Suspended Sentence upon Reparation or Restitution*, 73 A.L.R.3d 1240 (1976)).

Por consiguiente, a pesar de que la ley no prohíbe diferir la cuantía de la restitución a una vista posterior al acto de celebrar sentencia puede vulnerar los elementos reparadores promulgados en la Ley Núm. 259-1946. Toda vez que en ese momento el probando está imposibilitado de presentar o impugnar prueba sobre al valor económico de los daños. Esto, bajo el primer motivo antes discutido para imponer la restitución como condición para la probatoria.